IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DONALD R. HILYER, JR.   :
 (AIS #165924),      :
   Plaintiff,     :
vs.          :
          :  CIVIL ACTION 15-00356-WS-N
JEFFERSON S. DUNN, *et al.*,  :
Defendants.      :
          :

## REPORT AND RECOMMENDATION

Plaintiff Donald R. Hilyer, Jr., an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72(a)(2)(R), and is now before the undersigned on Defendants' Motion for Summary Judgment (Docs. 29, 30, 34). After careful review of the pleadings, and for the reasons set out below, it is recommended that Defendants' Motion for Summary Judgment be granted, and Plaintiff Hilyer's federal claims be dismissed with prejudice.

## I.  Summary of Allegations.

Plaintiff Donald R. Hilyer, Jr. is within the custody of the Alabama Department of Corrections and was confined at Fountain Correctional Facility (Fountain) and J.O. Davis Work Release Center, in Atmore, Alabama, as well as the Loxley Community Work Center (Loxley Work Release), in Loxley, Alabama at all times relevant to this action.

The background to Hilyer's complaint begins on December 31, 2014, when Hilyer suffered a seizure while incarcerated at J.O. Davis Work Release Center (J.O. Davis).  (Doc. 9-1 at 1).  Following the seizure, Hilyer was immediately transferred to the medical infirmary at Fountain and then airlifted by Life Flight to Mobile Infirmary, in Mobile, Alabama, for treatment.  (*Id*.).  Physicians at Mobile Infirmary diagnosed Hilyer with oligodendroglioma, a cancerous brain tumor, which was determined to have caused the seizure.  (Doc. 30-2 at 1-12).

Hilyer was hospitalized for 21 days in Mobile Infirmary during which time he underwent surgical treatment for partial removal of the brain tumor and was placed on prescription anti-seizure medications, Keppra and Dilantin, to control any potential seizure activity.  (Doc. 9-1 at 1).  Additionally, radiation therapy was prescribed and received to destroy the portions of the tumor remaining after surgery.  (Doc. 7 at 6).

Upon discharge from the hospital on January 20, 2015, Hilyer returned to the infirmary at Fountain, where he received all prescribed medications and radiation treatments. (*See* Doc. 30; Doc. 9-1 at 1).  On April 14, 2015, infirmary discharge papers were signed by the prison's physician, and Hilyer returned to J.O. Davis the following day, with orders to take, amongst other medications, Keppra twice daily (at 5:00 a.m. and 6:00 p.m.) and Dilantin three times daily (at 5:00 a.m., 11:00 a.m., and 6:00 p.m.).  (Doc. 30-10 at 97).  Hilyer remained at J.O. Davis for one week before being transferred to Loxley Work Release on April 21, 2015.  (Doc. 9-1 at 1).  However, within hours of arriving at Loxley Work Release, Hilyer suffered another seizure.  (*Id*.).

The medical records state that while walking to a water fountain at Loxley Work Release, Hilyer experienced seizure like activity on April 21, 2015; Hilyer was reportedly

found "lying on the floor, bleeding from his mouth with his eyes open, conscious." (Doc. 30 at 5). At 6:11 p.m., orders were given for him to be transported to Fountain's infirmary for necessary treatment and observation. (Doc. 30-11 at 1). Hilyer arrived at Fountain's health ward approximately one hour later and was examined by nursing staff at 7:35 p.m. on April 21, 2015, where he exhibited no signs of active seizure activity and was held for observation for 24 hours. (Doc. 30-11 at 3, 6).

On June 18, 2015, Plaintiff Hilyer brought this § 1983 action[1] alleging Eighth Amendment violations against: (1) Defendant Katherine Gibson, Administrator of Health Services, for denying him prescribed anti-seizure medications during the week of April 15 through 21, 2015, (2) Jefferson Dunn, Commissioner of the Alabama Department of Corrections, as Defendant Gibson's supervisor and for failure to pay cost of medical care, and (3) Shawn Geohagen, Certified Registered Nurse Practitioner, for denying him vitamins, dietary profile change, and medical treatment. (Doc. 9 at 5; Doc. 9-1 at 1; Doc. 18). He seeks compensatory and punitive damages from each defendant, payment of his medical bills, and his release from prison.[2] (Doc. 9 at 7, Doc. 7 at 7; Doc. 18 at 1).

Defendants have answered the suit, and their submitted Special Reports (Docs. 29, 30, 34) have been converted into a Motion for Summary Judgment (Doc. 31). After a thorough review of the motion and Plaintiff's response thereto (Doc. 32), this motion is ripe for consideration.

---

[1]    The complaint was originally filed in the United States District Court for the Middle

[2]    Plaintiff seeks $500,000.00 in compensatory damages and $500,000.00 in punitive damages from Defendants Dunn and Gibson, and $500,000.00 in punitive damages from Defendant Geohagen for mental and physical anguish, for a total of $2.5 million. (Doc. 7 at 7; Doc 9 at 7; Doc. 18 at 1).

Notably, Hilyer's relief request to be released from prison may only be granted pursuant to a habeas corpus petition, not in a section 1983 action. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (release from incarceration cannot be gained in § 1983 action); *Allen v. Thompson*, 815 F.2d 1433, 1435 (11th Cir. 1987) (same).

## II.    Standard of Review.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); s*ee also Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.").  Once this initial demonstration is made, the "responsibility then devolves upon the non-movant to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *see also Allen*, *supra*, at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and

admissions on file," designate specific facts showing that there is a genuine issue for trial."') internal citations omitted); *see Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, 'depositions, answers to interrogatories, and admissions on file.'") (internal quotations and citations omitted).

> Forbidding reliance upon pleadings precludes a party from "choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" . . . Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir.), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L.Ed.2d 33 (1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party."). In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Comer*, *supra*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether Defendants are entitled to summary judgment in this action, the undersigned has viewed the facts in the light most favorable to Plaintiff Hilyer. *Comer*, *supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski*, *supra*, 573 F.3d at 1165 (internal citations omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp.*, *supra*, 43 F.3d at 599.

## III. Analysis.

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *see also Robinson v. California*, 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1972) (Eighth Amendment is applicable to the states through the Fourteenth Amendment). The Supreme Court summarized a state's constitutional responsibilities with regard to inmates stating:

> [W]hen the State takes a person into its custody and holds him there
> against his will, the Constitution imposes upon it a corresponding duty to
> assume some responsibility for his safety and general well-being. . . . The
> rationale for this principle is simple enough: when the State by the
> affirmative exercise of its power so restrains an individual's liberty that it
> renders him unable to care for himself, and at the same time fails to
> provide for his basic human needs -- e.g., food, clothing, shelter, medical
> care, and reasonable safety -- it transgresses the substantive limits on state
> action set by the Eighth Amendment and the Due Process Clause.

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200, 109 S. Ct.

998, 103 L. Ed. 2d 249 (1989) (citations omitted).

In order to prevail on an Eighth Amendment claim, an inmate must make both an

objective and a subjective showing.  In *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994),

the court delineated the objective and subjective portions of an Eighth Amendment claim

as follows:

> An Eighth Amendment claim is said to have two components, an objective
> component, which inquires whether the alleged wrongdoing was
> objectively harmful enough to establish a constitutional violation, and a
> subjective component, which inquires whether the officials acted with a
> sufficiently culpable state of mind.

25 F.3d at 983.  To prevail on constitutional claims like the ones asserted by Plaintiff, he

must prove that there was "a substantial risk of serious harm," that Defendant was

subjectively deliberately indifferent to that risk, and causation.  *Hale*, 50 F.3d at 1582;

*see also Farmer*, 511 U.S. at 832-34.

The objective component of an Eighth Amendment claim for inadequate health

care requires that Hilyer demonstrate the existence of an "objectively serious medical

need."  *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  A serious medical need is

"'one that has been diagnosed by a physician as mandating treatment or one that is so

obvious that even a lay person would easily recognize the necessity for a doctor's

attention.'" *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).  "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id*. (internal quotation marks and citation omitted).

There can be no doubt that controlling seizures constitutes a serious medical need, *see Johnson v. Hay*, 931 F.2d 456, 461 (8th Cir. 1991); *Miranda v. Munoz*, 770 F.2d 255, 259 (1st Cir. 1985); thus, the Court will focus primarily on the subjective component of Hilyer's Eighth Amendment claim, which generally "inquires whether the officials acted with a sufficiently culpable state of mind." *Sims*, 25 F.3d at 983-84 (citing *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)).  The Supreme Court has declared that an official must have acted with deliberate indifference to a risk in order to implicate the Eighth Amendment.  In defining "deliberate indifference," the Supreme Court in *Farmer* stated:

> With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness. *See e.g., LaMarca v. Turner*, 995 F.2d 1526, 1535 (CA11 1993).… It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.

*Farmer*, 511 U.S. at 836.  Thus, the Court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment.  *Id*. at 839-40.  Under this test, there is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not . . . ." *Id.* at 838. It is not enough that an inmate proves that the defendant should have known of the risk,

but did not, as actual knowledge is the key.  *See, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996).

Thus, the undersigned must determine whether Plaintiff Hilyer has sufficiently alleged that each defendant seeking summary judgment was deliberately indifferent to a serious need.

### 1.   Katherine Gibson, Administrator of Corizon Health Services.

Hilyer alleges in his complaint that Gibson exhibited "carelessness, unskillfulness, and medical negligence in violation of [his] constitutional rights."  (Doc. 7-1 at 6; Doc. 9 at 5).  Negligence, however, is not a constitutional violation.  *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000) (To establish deliberate indifference to a serious medical need, a plaintiff must show "the response made by public officials to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligence in diagnosis or treatment,' or even 'medical malpractice' actionable under state law.")(internal citations omitted)).  Even looking beyond the specified allegations and liberally construing Hilyer's complaint, it falls short of the necessary elements to support a § 1983 claim, as it completely lacks facts establishing deliberate indifference on the part of any defendant.[3]

---

[3]     Any attempt on the part of Hilyer to assert a medical malpractice claim related to the alleged facts must be brought pursuant to "The Alabama Medical Liability Act" (AMLA), ALA. CODE §§ 6-5-541 *et seq*.  The AMLA applies to "any action for injury or damages or wrongful death, whether in contract or in tort, against a healthcare provider for breach of the standard of care."  *See* ALA. CODE § 6-5-548(a).  The AMLA contains heightened factual pleading requirements, *see* § 6-5-551, and plaintiff bears the burden of proving his case.  *See Willard v. Perry*, 611 So. 2d 358 (Ala. 1992) (As part of tort reform, the enactment of the AMLA did away with the "scintilla rule" of evidence in medical malpractice cases and increased the level of proof needed to survive summary judgment to that of "substantial evidence."); *Edgeworth v. Family Chiropractic & Health Ctr., P.C.*, 940 So. 2d 1011 (Ala. 2006) (Plaintiff bears the burden of proof in medical malpractice case.); *McAfee by & through McAfee v. Baptist Medical Ctr.*, 641 So. 2d (Ala. 1994) (Plaintiff must prove the alleged negligence through expert testimony, unless

A review of the Alabama Department of Corrections' Medication Administration Record reveals that Hilyer was scheduled to receive two daily doses of Keppra , at 4:00 a.m. and 4:00 p.m., respectively, and three daily doses of Dilantin , at 4:00 a.m., 11:00 a.m., and 4:00 p.m., respectively.  (Doc. 30-6 at 34).  The log confirms that Hilyer received all prescribed daily doses (of both medications) on April 16, 17, and 19, 2015. (*Id*.).  Thus, the record evidence before the Court demonstrates that Hilyer was not without his anti-seizure medications for the entire week as he alleges in his complaint. (*See* Doc. 7-1 at 6; Doc. 9 at 5).  However, the record does reflect numerous missed medication doses throughout the week in question, as discussed below.

On April 15, 2015, the medication log reveals Hilyer's morning doses of medication were administered at the infirmary.  (Doc. 30-6 at 34).  Subsequently, Hilyer was discharged from the infirmary at Fountain and transferred to J.O. Davis.  (Doc. 30-6 at 34; Doc. 9-1 at 1).  Upon arrival at J.O. Davis, Plaintiff Hilyer reportedly missed his evening doses of medications, as the log dictates on April 15, 2015, the 4:00 p.m. dose of Keppra and Dilantin were not administered due to Hilyer's failure to show up for pill call at this time.  (Doc. 30-6 at 34).

On April 16 and 17, 2015, Hilyer received all doses of medication as prescribed. (*Id*.).

---

an understanding of the alleged lack of due care or skill requires only common knowledge or experience.).

Given that this report recommends the dismissal of alleged federal claims and Hilyer's failure to specify intent to pursue a medical malpractice claim, the undersigned declines to exercise supplemental jurisdiction over such potential state law medical malpractice claim.  28 U.S.C. § 1367(c)(3); *Scarfo v. Ginsberg*, 175 F.3d 957 (11th Cir. 1999), *cert. denied*, 529 U.S. 1003 (2000).

On April 18, 2015, the second missed dose is noted; one dosage of Dilantin to be given at 11:00 a.m. is logged as unadministered, also due to Hilyer's failure to show up for pill call. (*Id*.).

On April 19, 2015, all medications were again administered as prescribed. (*Id*.).

On April 20, 2015, Defendant admits and the record confirms that the prison pharmacy ran out of Keppra, thus Hilyer was not given either dose of Keppra on this day, but he received all three doses of Dilantin on the 20th. (*Id*.; Doc. 30 at 5).

On April 21, 2015, the record indicates Hilyer was a "no show" for the morning medication doses (one dose of Keppra and two doses of Dilantin). (*Id*.). It is on this day that Hilyer was transferred to Loxley Work Release. (Doc. 30 at 5). Plaintiff contends approximately two hours after arriving at Loxley Work Release, he suffered the seizure subject of this action. (Doc. 9-1 at 1). Subsequent to the seizure, the nursing staff at Loxley Work Center examined Hilyer, and Defendant submits that Hilyer told the nurse that he had been without his seizure medication for a week. (Doc. 30- at 6). Hilyer claims "[t]he nurse at Loxley said she couldn't believe they sent me without my meds and that they had let me run out." (Doc. 9 at 10). At 6:11 p.m. orders were given to transfer Hilyer from Loxley Work Center to the infirmary at Fountain Correctional Center. (Doc. 30-11 at 1). Hilyer was immediately bused back to the infirmary at Fountain and received medical attention at 7:35 p.m. (Doc. 30-11 at 3). Although the infirmary staff observed "no seizure-like activity" upon examination of Hilyer, he was held for monitoring. (*Id*.).

Notably, the medication administration record shows that on the evening of April 21, 2015, Hilyer received one dose of Keppra and one dose of Dilantin, both at 5:30 p.m.,

administered by staff initials "LM" and "TS".  (Doc. 30-6 at 34).  These staff initials are

consistently found in the log associated with the nursing staff at Fountain's infirmary.

(*Id*.).  Thus, it appears from the records that Hilyer received a dose of his medications

immediately upon the return to Fountain's infirmary following his seizure at Loxley

Work Release (despite the logged time of dispense being inaccurately recorded).

While the seriousness of Plaintiff's condition obviously necessitates strict

adherence to prescribed treatment plans, namely anti-seizure medications, the claims

alleged and the evidence of record do not rise to the level of a constitutional violation

and, instead, represent negligence at worst.  Isolated incidents of missed medication and a

medical emergency do not establish deliberate indifference.  *Bishop v. Orr,* 180 F. App'x

505 (5th Cir. 2006) (On two occasions, lasting several days, plaintiff did not receive his

prescribed medication and suffered injury after falling due to two seizures; however,

defendants noted the missed medication and reordered the same; thus, no deliberate

indifference was established.); *but see Duncan v. Corr. Med. Servs*., 451 F. App'x 901,

902-04 (11th Cir. 2012) (summary judgment was denied where plaintiff failed to receive

several medications, one for a month, another for 22 days, and a third medication was

denied for more than a month, causing him to be rushed to the hospital on 5 occasions);

*Nun v. Bracey*, No. 89-6308, 1991 U.S. App. LEXIS 2501 (6th Cir., Feb. 11, 1991)

(deliberate indifference established where defendants denied plaintiff's repeated requests

for epilepsy medication and ultimately suffered a seizure and bodily injury); *Neal v.

Foster*, No. 3:12-cv-938, 2012 U.S. Dist. LEXIS 135311 (M.D. Tenn., Sept. 21, 2012)

(deliberate indifference established where epileptic medications were suddenly stopped

and plaintiff suffered 13 seizures as a result).  "It is obduracy and wantonness, not

inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986).

> Anyone suffering a chronic condition would reasonably expect to have a regular supply of the necessary medications. In this case, plaintiff suffered a temporary cessation in receiving his medication. Assuming, for purposes of argument, that plaintiff can show the seizures he suffered were caused by the missed doses of [medication], the facts he has alleged, while clearly unfortunate, do not rise above the level of negligence. Consequently, plaintiff's allegations, while they might support a claim of negligence or malpractice against one or more of the defendants, do not support a claim that the defendants, or any of them, were deliberately indifferent, that is, that they acted or failed to act in the knowledge that they were creating a substantial risk of serious harm to plaintiff. *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1981, 128 L. Ed. 2d 811 (1994).

*Bishop v. Orr*, 2004 U.S. Dist. LEXIS 24765, *26-28, 2004 WL 2826467 (N.D. Tex. Dec. 9, 2004), *aff'd* 180 F. App'x 505 (5th Cir. 2006).

As to the case at hand, the certified Medication Administration Record of the Alabama Department of Corrections and the sworn affidavit of Defendant Gibson evidences that the missed doses of medication on April 15, 18, and 21 were due to Plaintiff's failure to show up for pill call and not due to Defendant's actions.[4]  Thus, the undersigned concludes that the only potential liability claim in the complaint relates to the two Keppra doses missed on April 20, 2015, when the prison pharmacy ran out of the anti-seizure medication.

---

[4]     The corresponding days of intra-prison transfers and missed medications create a noticeable pattern, yet the record is silent as to any allegations that medications were skipped or missed due to the transfers.  Additionally, the undisputed record before the court clearly details that Plaintiff is liable for all missed doses of anti-seizure medication but for the Keppra doses on April 20, 2015.  Therefore, without objection to the Medication Administration Record or the affidavits of the defendants, the undersigned relies on the record.

As to this missed dose, Defendant avers that the Keppra medication was immediately reordered on April 20, 2015, once its depletion was realized, and Plaintiff received all three doses of his Dilantin medication on that day.  Plaintiff Hilyer does not dispute this, nor has he objected to Defendant's assertion that all other missed doses of medication were due to his failure to show for pill call.  (*See* Doc. 32).  While failing to dispense medication exactly as prescribed may constitute negligence, *see Jones v. United States*, 91 F.3d 623, 625 (3d Cir. 1996), it falls severely short of deliberate indifference. *Zentmyer v. Kendall Cnty.*, 220 F.3d 805, 812 (7th Cir. 2000) (Deliberate indifference is an onerous standard for the plaintiff, and forgetting doses of medicine, however incompetent, is not enough to meet it.).  Also, the record is void of any suggestion that defendants were aware that the failure to administer one anti-seizure medication, Keppra, while receiving complete doses of another anti-seizure medication, Dilantin, would likely result in injury.  Thus, there is no evidence before the court of deliberate indifference of the part of defendants, only the unfortunate occasion that the pharmacy ran out of Keppra on April 20, 2015.   *Mahan v. Plymouth Cnty. House of Corrs.*, 64 F.3d 14, 18 (1st Cir. 1995) (Failure to administer prescription medication did not constitute deliberate indifference absent evidence that prison officials knew the plaintiff would suffer serious medical consequences without medication).  Additionally, Plaintiff received immediate and proper care upon notification of his seizure on April 21, 2015.  Thus, the record belies the contention that defendants provided inadequate medical care or treatment to Plaintiff, and it is recommended that summary judgment be granted in favor of Defendant Gibson.

2.  **Jefferson Dunn, Commissioner of the Alabama Department of Corrections.**

Plaintiff Hilyer presents two claims against Defendant Dunn.  The first corresponds to the previously discussed Eighth Amendment violation asserted against Defendant Gibson; Hilyer claims Defendant Dunn is responsible, as a supervisory official, for the missed doses of anti-seizure medication.  (Doc. 7-1 at 6; Doc. 9 at 5).  This claim fails for two reasons.  First, the court has determined no constitutional violation has occurred related to the missed doses of anti-seizure medication.  Second, such a claim that Defendant Dunn is liable as Defendant Gibson's supervisor is a claim rooted in the theory of *respondeat superior* and is not cognizable in a § 1983 action.  *Edwards v. Ala. Dep't of Corrs.*, 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat superior* is not sufficient to support [a] § 1983 claim. . . ."); *see also Duff v. Steubb*, 378 F. App'x 868 (11th Cir. 2010) ("Deliberate indifference can be based on the defendant's personal participation in the allegedly unconstitutional conduct or on the defendant's actions as a supervisor.").

> "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); *Gonzalez*, 325 F.3d at 1234, 2003 WL 1481583, at *4 (concluding supervisory officials are not liable on the basis of *respondeat superior* or vicarious liability).  Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Gonzalez*, 325 F.3d at 1235, 2003 WL 1481583, at *5; *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).   The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Gonzalez*, 325 F.3d at 1234, 2003 WL 1481583, at *5 (quoting B*raddy v. Fla. Dept. of Labor & Emp't,* 133 F.3d 797, 802 (11th Cir.1998)); *Brown*, 906 F.2d at 671. Alternatively, the

15

> causal connection may be established when a supervisor's "'custom or policy ... result[s] in deliberate indifference to constitutional rights'" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez*, 325 F.3d at    , 2003 WL 1481583, at *5 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)); *Hartley*, 193 F.3d at 1263; *see also Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1560-61 (11th Cir. 1993). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez*, 325 F.3d at 1234, 2003 WL 1481583, at *4 (internal quotation marks and citation omitted).

*Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  In instances where supervisory liability is based on a supervisor's custom or policy, a plaintiff must show that the custom or policy was "the 'moving force [behind] the constitutional violation.'" *Pinkney v. Davis*, 952 F. Supp. 1561, 1569 (M.D. Ala. 1997) (citations omitted).  "[I]t is clear that not only must there be some degree of 'fault' on the part of [defendant] in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation." *Id.* (citations omitted).

Hilyer has posited no allegations or facts connecting Defendant Dunn to an unconstitutional policy or custom regarding the administration or withholding of prescription medication from inmates.  Given that Hilyer fails to personally link actions of Defendant Dunn to a claim, the undersigned determines that Hilyer has failed establish a valid Eighth Amendment claim and summary judgment should be granted in favor of Defendant Dunn.

The second claim asserted against Defendant Dunn is for the alleged failure of the Alabama Department of Corrections (ADOC) to provide free medical care in violation of

the Eighth Amendment.[5]  In analyzing this claim, the court starts with the necessary requirements to bring a civil rights claim against a state actor.

In order "[t]o sustain a cause of action based on section 1983, [a plaintiff] must establish two elements: (1) that [he] suffered a deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States, and (2) that the act or omission causing the deprivation was committed by a person acting under color of law." *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987) (internal quotations and citation omitted).  Hilyer, however, fails to establish the deprivation of a constitutional right, as courts have held a prisoner does not have a "general constitutional right to free health care."  *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997).

It is clearly established that the constitution imposes on governments a duty to provide medical care to those in its custody.  *See Estelle v. Gamble,* 429 U.S. 97, 103-04, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976) (determining the Eighth Amendment requires adequate medical care be provided to convicted prisoners); *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979) (finding the Due Process Clause requires the government to provide adequate medical care for pretrial detainees and those apprehended by the police).  The reasoning behind this obligation is simple, "it is but just that the public be required to care for the prisoner, who cannot by reason of the

---

[5]        In his complaint, Hilyer states, "I feel as if I am being punished for having cancer. . . I'm receiving bills from collection agencies for medical tests and Life Flight . . . ."  (Doc. 9-1 at 2). Although Hilyer does not articulate the constitutional right under which he asserts his claim, the undersigned interprets this allegation as an attempt to state a claim against Defendant Dunn for the failure of the ADOC to provide free medical care in violation of the Eighth Amendment's prohibition against cruel and unusual punishment, which has been interpreted to require the provision of medical care.

deprivation of his liberty, care for himself." *Estelle,* 429 U.S. at 104 (quoting *Spicer v. Williamson*, 132 S.E. 291, 293 (N.C. 1926).  However, the constitutional duty to *provide* medical care to prisoners is not the same as the requirement to *pay* for it.  *See City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 245, 103 S. Ct. 2979, 77 L.Ed.2d 605 (1983).[6]  As stated by the Supreme Court in *City of Revere*,

> as long as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care. That is a matter of state law.  If, of course, the governmental entity can obtain the medical care needed for a detainee only by paying for it, then it must pay. There are, however, other means by which the entity could meet its obligation.

*City of Revere*, 463 U.S. at 245.  Given that there is no per se constitutional right to free health care, the undersigned finds that the determination of whether or not Defendant Dunn is responsible for the costs of Hilyer's medical care is solely a state law question.[7]

---

[6]        In *City of Revere,* a hospital, who provided medical treatment to a detainee shot by a police officer, brought suit against the city for the cost of medical services rendered based on interpretation of the Eighth Amendment's requirement of government to provide medical care to those it incarcerates.  The Supreme Court reviewed the case pursuant to the Fourteenth Amendment's Due Process Clause, however, since the medical care was provided to a pretrial detainee instead of a convicted prisoner.  The Court reasoned, that under either standard, the constitutional obligation was fulfilled by promptly attending to the medical needs and obtaining needed medical treatment for the person in custody.  *City of Revere*, 463 U.S. at 244-45 ("Whatever the standard may be, Revere fulfilled its constitutional obligation by seeing that Kivlin was taken promptly to a hospital that provided the treatment necessary for his injury.").  The Court went further to state, "[n]othing we say here affects any right a hospital or governmental entity may have to recover from a detainee the cost of the medical services provided to him."  *Id*. at n.7.

[7]        The ALA. CODE §14-3-30 (1975) states, "[w]hen an inmate sentenced to the custody of the department . . . develops a medical condition which requires immediate treatment at a medical-care facility outside the [] jail, the department shall be financially responsible for the cost of the treatment of the inmate. . . ."  Additionally, the legislature has made possible for inmates, otherwise eligible for Medicaid benefits, to be "eligible for temporary reinstatement of Medicaid eligibility for care received outside of such a public institution as an inpatient in a medical institution for more than 24 hours."  ALA. CODE § 22-6-12(b) (1975).

Notably, there appears to be no need to determine whether or not supplemental jurisdiction should be extended to this state law claim, as the claim is moot.

In a Supplemental Special Report, Defendant Gibson affirms that "[a]ll medical bills and invoices from outside medical providers, forwarded to Fountain Correctional Facility, are supposed to be sent directly to Corizon personnel for the medical bills and invoices to be paid." (Doc. 34 at 5). In the event an inmate inadvertently receives a medical bill or invoice, the inmate is instructed to forward the bill to Corizon's medical staff. (*Id*.). Defendant Gibson further avers:

> The medical bill from the Life Flight Services was obviously inadvertently not caught by the mail room at Fountain and it was mistakenly forwarded to Mr. Hilyer.
>
> The Life Flight Medical bill has been paid by Corizon and Mr. Hilyer was never responsible for payment of the Life Fight services invoice.
>
> During Mr. Hilyer's incarceration with the Alabama Department of Corrections, he has at no time been responsible for payment of his health care related services besides the ADOC co-pay for non-chronic care related health treatment.
>
> All of Mr. Hilyer's medical expenses during the time of his incarceration have been paid and Mr. Hilyer at no time has been responsible for payment of any of his health care related services, either those health related services provided internally at the correctional facility or those provide externally by outside medical providers.

(Doc. 34 at 5-6). Although given ample time to respond to the Supplemental Special Report, Plaintiff has failed to do so. (Doc. 33). Thus, the facts submitted in the supplemental report are undisputed, and the undersigned finds that this potential state law claim is moot, at this time, as all Plaintiff Hilyer's medical bills have been paid to date. As such, it is recommended that Defendants be granted summary judgment on this claim and that the claim be dismissed from this action.

### 3.  Shawn Geohagen, Certified Registered Nurse Practitioner.

Plaintiff Hilyer is suing the final defendant in this action, Defendant Nurse Geohagen, for denial of an amended food profile and vitamins and delayed medical treatment.  (Doc. 18 at 1).

Pursuant to the Eighth Amendment, prisoners must be provided "basic humans needs – e.g., food, clothing, medical care, and reasonable safety. . . ." *Helling v. McKinney*, 509 U.S. 25, 31-32, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993), quoting *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-1006, 103 L. Ed. 2d 249 (1989).  However, the right to food is that of "[a] well-balanced meal, containing sufficient nutritional value to preserve health." *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977).  A claim for deprivation of food is established only by showing the denial of the "minimal civilized measure of life's necessities," *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S. Ct. 2321, 115 L.Ed.2d 271 (1991), as "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 69 L.Ed.2d 59 (1981).  If prison conditions are merely "restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id*. at 347.  Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they "involve the wanton and unnecessary infliction of pain." *Id*.; *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).

> To prevail on [an] Eighth Amendment claim for damages brought under section 1983, the plaintiffs must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering, *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399 (1981), (2) the defendant's "deliberate indifference" to that condition, *Wilson v. Seiter*, [501] U.S. [294], 111 S. Ct. 2321, 2327 (1991), and (3) causation,

> *Williams v. Bennett*, 689 F.2d 1370, 1389-90 (11th Cir. 1982). For our
> purposes, the Eighth Amendment defines the contours of the first two
> elements and section 1983 delimits the third.

*LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993), *cert. denied*, 510 U.S. 1164,

114 S. Ct. 1189, 127 L. Ed. 2d 539 (1994) (citations omitted).   Under the objective

component Hilyer must show that a condition "pose[s] an unreasonable risk of serious

damage to his future health or safety" and that the "risk of which he complains is not one

that today's society chooses to tolerate[;]" thus, the challenged condition must be

"extreme" and violate "contemporary standards of decency to expose anyone unwillingly

to such a risk." *Chandler*, 379 F.3d at 1289-90, citing *Helling*, 509 U.S. at 36, 113 S.Ct.

at 2482.   The subjective component requires that Hilyer show that Defendant Geohagen

"wantonly permitted the constitutionally infirm condition to persist" while "knowingly or

recklessly disregard[ing] [Hilyer's] basic needs." *LaMarca*, 995 F.2d at 1535.   The third

component, "requires proof of an affirmative causal connection between the actions taken

by a particular person 'under color of state law' and the constitutional deprivation." *Id*. at

1538, quoting *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

 Hilyer contends that on November 18, 2015, his requests for a food profile

change, to receive a diabetic fruit tray, and vitamins were denied by Defendant

Geohagen.  (Doc. 18 at 1; Doc. 30-11 at 7).  This claim, however, falls significantly short

of a constitutional violation.  The complaint is void of allegations that Hilyer was

nutritionally deficient in any way or that medical staff had prescribed Hilyer vitamins or

indicated a need for additional fruit at meals.  Instead, the evidence presented indicates

that Hilyer received the standard prisoner's diet of three meals a day and simply desired

the extra fruit given to inmates with a diagnosis of diabetes and the extra vitamin intake.

The deprivation of food constitutes cruel and unusual punishment only where it denies a prisoner the minimal civilized measure of life's necessities. *See Whitlock v. Merchant*, 2015 U.S. Dist. LEXIS 129133 (E.D. Tex. July 24, 2015) (Denial of special diet for high blood pressure and cholesterol levels did not represent a constitutional violation.); *Musto v. Trinity Food Servs.*, 2010 U.S. Dist. LEXIS 94063 (M.D. Fla. Sept. 9, 2010) (Denial of bread and desserts from kosher diet did not rise to level of constitutional violation.); *McClure v. Tex. Dep't Crim. Justice-Corr. Insts. Div.*, 2011 U.S. Dist. LEXIS 20560 (E.D. Tex. Jan. 31, 2011) (Complaint of prison meals lacking fruits and vegetables, amongst other satiating claims, did not constitute an Eighth Amendment violation.). Here, Hilyer as plainly failed to show a constitutional violation related to denial of food or condition of confinement, as the denial of a fruit tray and vitamins violate "contemporary standards of decency" nor does it demonstrate a condition so extreme that society cannot tolerate it. *Chandler*, 379 F.3d at 1289-90. Thus, this allegation fails to objectively state a valid Eighth Amendment claim and, therefore, should be dismissed.

Hilyer also claims that Defendant Geohagen denied him medical care. The record evidence reflects that Hilyer received a brain MRI on April 29, 2015, and was ordered for a follow-up MRI with contrast in three months. (Doc. 30-11 at 41). The follow-up MRI scan was performed on July 16, 2015, and revealed "[n]o interval change in the appearance, size, or extent of infiltrating tumor from the postoperative brain MRI on 4/29/2015. No evidence of worsening or regression." (Doc. 30-5 at 27). On July 30, 2015, it was ordered that another follow-up MRI be taken in three months to assess the status of Hilyer's brain tumor (Doc. 30-11 at 48; Doc. 30-5 at 28, 31-32); it is this scan which Hilyer contends was delayed by Defendant Geohagen.

Based on the dates provided, the MRI at issue should have been performed in October 2015; however, Hilyer contends and the record reflects he did not receive the follow-up brain MRI until December 10, 2015.  (Doc. 30-5 at 36).  The MRI scan obtained on December 10, 2015, reported that the brain tumor showed "[n]o significant interval change from prior MRI without and with contrast. . . . Stable brain MRI compared with 7/16/2015."  (*Id*. at 38).

As alleged by Hilyer, a "[d]elay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain."  *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n. 9, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) (internal citations and quotation marks omitted).  However, to succeed in proving that the delay of medical care rose to a constitutional violation, Hilyer "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. . . . Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.  *Id*. at 1188-89 (internal citations omitted) (footnotes omitted); *see also, Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1307 (11th Cir. 2009).

Although Hilyer's follow-up brain MRI was received a month to a month and a half later than ordered by his oncologist, the results of the scan are conclusive that Hilyer's tumor was unchanged since the previous scan in July and April of 2015.  The record, therefore, belies any claim that Hilyer was harmed or that his condition was worsened by the delay in receiving the follow-up MRI.  Thus, Hilyer fails to establish an

Eighth Amendment claim for denial or delay in medical care, and Defendant should be granted summary judgment on such claim.

### IV.    Conclusion.

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment be **granted,** that Plaintiff Hilyer's action against Defendants Gibson, Dunn, and Geohagen be **dismissed** with prejudice.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

### <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must

identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 28th day of October, 2016

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE